UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RANDOLPH DOUGLAS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:20-cv-01491-JMS-DML |
| DIAL AMERICA MARKETING, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**ENTRY GRANTING MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*,
SCREENING COMPLAINT, AND DIRECTING FURTHER PROCEEDINGS**

Pending before the Court is *pro se* Plaintiff Randolph Douglas's Complaint, [Filing No. 1],
and Motion for Leave to Proceed *In Forma Pauperis*, [Filing No. 5].  This Order addresses Mr.
Douglas's Motion, screens his Complaint pursuant to 28 U.S.C. § 1915(e)(2), and directs further
proceedings.

**I.**
**MOTION TO PROCEED *IN FORMA PAUPERIS***

28 U.S.C. § 1915(a) permits the Court to authorize a plaintiff to file a lawsuit "without
prepayment of fees" if the plaintiff "submits an affidavit" demonstrating that he lacks the assets to
pay the filing fee at this time.  28 U.S.C. § 1915(a)(1).  Mr. Douglas's Motion for Leave to Proceed
*In Forma Pauperis*, [5], meets this standard and is therefore **GRANTED**.  28 U.S.C. § 1915(a).

The Court notes that, while *in forma pauperis* status allows the plaintiff to proceed without
*pre*-payment of the filing fee, the plaintiff remains liable for the full fee.  *Robbins v. Switzer,* 104
F.3d 895, 898 (7th Cir. 1997) (Every *in forma pauperis* litigant is liable for the filing fee; "all [18
U.S.C.] § 1915(a) does for any litigant is excuse the *pre*-payment of fees") (emphasis in original).
The Court does not have the authority to waive the filing fee, and it remains due despite plaintiff's

1

*in forma pauperis* status.  *Fiorito v. Samuels*, 2016 WL 3636968, *2 (C.D. Ill. 2016) ("The Court

does not have the authority to waive a filing fee"); *McDaniel v. Meisner*, 2015 WL 4773135, *5

(E.D. Wis. 2015) (same principle).  The filing fee for *in forma pauperis* litigants is $350.  *See*

USDC Fee Schedule at https://www.insd.uscourts.gov/fees-financial-information (stating that the

$400 filing fee includes a $50 administrative fee, but that the administrative fee "does not apply

to…persons granted in forma pauperis status under 28 U.S.C. § 1915").  Immediate payment is

not required; however, the $350 balance remains owing.

## II.
### SCREENING

### A.  Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2), the Court shall dismiss a case brought by a plaintiff

proceeding *in forma pauperis* "at any time if the court determines that . . . the action . . . is frivolous

or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief

against a defendant who is immune from such relief."  In determining whether a complaint states

a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

To survive dismissal:

> [the] complaint must contain sufficient factual matter, accepted as true, to state a
> claim for relief that is plausible on its face.  A claim has facial plausibility when
> the plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Complaint

In his Complaint, Mr. Douglas alleges that he was hired by Dial America Marketing, LLC

("Dial") in October 2017 to work as a sales agent.  [Filing No. 1 at 2.]  He alleges that he excelled

2

in his role, including being named "Heavy Hitter" of the week on one occasion and sales agent of the month on another occasion.  [Filing No. 1 at 2.]

Mr. Douglas states that "[t]he 'White' sales floor supervisor Susan Lewis was promoted to sales floor manager," and following her promotion, she began to treat Mr. Douglas differently. [Filing No. 1 at 2.]  Specifically, Mr. Douglas alleges that he and Ms. Lewis had been friendly prior to her promotion, but after the promotion she would not speak to him during his shifts.  [Filing No. 1 at 2.]  According to Mr. Douglas, Ms. Lewis began harassing him inside the workplace in September 2018 by giving him directives in condescending tones, sending him to work on the secondary phone system where sales were slower, and sending him to the opposite side of the sales center despite the fact that his disability made it difficult for him to move from one side of the center to the other.  [Filing No. 1 at 2.]  Mr. Douglas alleges that whenever Ms. Lewis was running the sales lead dialer, his sales volume and commission dropped, and when he expressed this concern to Ms. Lewis, she responded, "tough."  [Filing No. 1 at 2.]

Mr. Douglas alleges that, in December 2019, he reported the harassing treatment to a Dial human resources representative and an assistant manager and threatened to file a complaint about Ms. Lewis with the Indiana Civil Rights Commission.  [Filing No. 1 at 2-3.]  As a result of that report, Mr. Douglas met with the assistant manager and Ms. Lewis, and Ms. Lewis "agreed to be more mindful of her actions towards [Mr. Douglas] and of the age of the sales leads she would distribute going forward."  [Filing No. 1 at 3.]

On January 31, 2019, Mr. Douglas was informed that Ms. Lewis was leaving her job at Dial to join another company.  [Filing No. 1 at 3.]  Mr. Douglas alleges that, in the final days of her employment with Dial, Ms. Lewis spent "a good amount of time" in the assistant manager's office, "adjusting the sales lead dialer and listening in on agent calls."  [Filing No. 1 at 3.]

3

According to Mr. Douglas, on February 1, 2019, the assistant manager called him into her office and told him that Ms. Lewis had done a spot check of one of his calls and discovered that he had processed a sale without the customer's permission. [Filing No. 1 at 3.] Accordingly, Mr. Douglas was terminated for violating company sales policy, pending an investigation. [Filing No. 1 at 3.] Mr. Douglas alleges that he was shocked and "felt that this action was retaliation for [him] expressing [his] next step to be taken against Ms. Lewis." [Filing No. 1 at 3.] He seeks compensatory damages and attorneys' fees. [Filing No. 1 at 3.]

Under the "Basis for Jurisdiction" heading of his Complaint, Mr. Douglas cites Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. [Filing No. 1 at 1.] In parentheses, he lists "race, color, gender, religion, [and] national origin." [Filing No. 1 at 1.]

## C. Discussion

Title VII prohibits status-based discrimination in the workplace on the basis of race, color, religion, sex, national origin, sexual orientation, or gender identity. *Bostock v. Clayton Cty., Georgia*, --- S.Ct. ----, 2020 WL 3146686 (June 15, 2020); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). Title VII also prohibits an employer from retaliating against an employee "on account of [the] employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Nassar*, 570 U.S. at 342. Courts in this Circuit apply a "minimal pleading standard" for "simple" discrimination claims, and the plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

Here, Mr. Douglas generally alleges that he was harassed or mistreated at work and then terminated for reporting the harassment. However, he does not allege why he was harassed or include any specific facts suggesting that his harassment or termination were based on any

4

characteristic protected by Title VII, such as his race, color, religion, sex, national origin, sexual orientation, or gender identity.  Accordingly, his allegations do not state a claim for discrimination or retaliation under Title VII.  To the extent that Mr. Douglas was attempting to invoke any other federal employment discrimination statute—such as the Americans with Disabilities Act—Mr. Douglas has not specifically identified any characteristic protected by other statutes—such as a disability—that was the reason for his alleged mistreatment.

The Court is mindful of Mr. Douglas's *pro se* status and the attendant duty to construe his pleadings liberally.  *See e.g.*, *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019).  Nevertheless, because his factual allegations do not state a federal claim for relief, his Complaint must be dismissed.  Consistent with the policy that *pro se* litigants should be given ample opportunity to correct deficiencies, *see id.*, Mr. Douglas shall have until **July 6, 2020** to file an Amended Complaint that adequately sets forth a basis for this Court to exercise jurisdiction and provides a "a short and plain statement of the claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8.

### III.
#### FURTHER PROCEEDINGS

Based on the foregoing, Mr. Douglas's Motion for Leave to Proceed *In Forma Pauperis*, [5] is **GRANTED**, and his Complaint, [1], is **DISMISSED WITHOUT PREJUDICE**.  Mr. Douglas shall have until **July 6, 2020** to file an Amended Complaint that addresses the deficiencies outlined in this Order and otherwise complies with federal pleading standards.  Failure to do so may result in dismissal of this case with prejudice.

Date: 6/15/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail to:**

RANDOLPH DOUGLAS
5651 East 30th
#323
Indianapolis, IN 46218